The next case on the oral argument calendar is Kaur v. Mukasey. Good morning, Your Honors. May it please the Court, Ina Lipkin on behalf of the petitioner. This is an immigration matter in which the BIA affirms citing matter of Burbano to the IJ's incredibility finding, and the petitioner challenges that finding. The main issue here, of course, is did the petitioner establish an exception to the one-year bar or whether she, with her testimony and documentary proofs, established that she indeed entered the United States and filed her application within one year of that entry. The IJ based his negative credibility finding on what he deemed the insufficiency of the documentary evidence to establish her date of entry, and the petitioner argues that his findings are erroneous and that the BIA erroneously affirmed those findings. The petitioner submitted a few documents to substantiate her claim. That was the matriculation certificate, which was a photocopy, and her passport, which is a photocopy. Now, first off, the government issued the notice to appear, which is Exhibit 1, and the third allegation there states that she entered at Bellingham, Washington in December 2000. So the respondent was not told that her identity would be at issue or that even she would really have to establish the one-year bar since the government had conceded her time and place of entry in the notice to appear. She had submitted the photocopies at the date of the hearing and mistakenly forgot the original passport for the hearing. The record is unclear whether she had furnished that passport at her asylum interview. If she had furnished the original of the passport at the asylum interview, then the government had already had an opportunity to examine that document. The petitioner argues that the judge's findings, that the documents are fraudulent or insufficiently authenticated, are groundless. He did not establish what about the documents make them fraudulent. They were not sent for any forensic investigation. The judge did not continue the case to allow the government to obtain the originals and send them for forensics. So the very basis of his incredibility finding regarding the one-year bar is without merit. And the BIA erroneously affirmed that. Turning to — Let's just go back to the identity issue for just a moment. Sure. Does the petitioner have any obligation to sort of establish who they are? Yes, she does, of course. She does have an obligation. And she says she fulfilled it by submitting the documents which she had. So when the I.J. admitted them, he admitted them. He said, or I don't know, but when the I.J. did admit these documents, the I.J. said, well, they're admitted, but I'm not going to give them much weight. Right. Because they're photocopies. Yes. Is that right? Yes, I do believe he said that. Then her testimony with respect to the passport was less than clear, correct? The petitioner admits that there was some ambiguity to her testimony regarding the passport. But what it boils down to is since the I.J. didn't, say, continue the hearing to allow her to furnish the original, it's really irrelevant whether she was living in the Punjab or in Delhi when it was issued or whether she or her uncle paid someone or not to get it. Because once she furnishes that passport to the government, they could easily do an investigation on it. And if the results came back negative, that there is no fraud, well, then she has established both her identity and the date that the passport was issued. The photocopy indicates it was issued in 2000, and she filed her application within a year of December 2000. So that would establish the one-year issue as well. But because the I.J. didn't put her on notice after she had submitted the photocopy and just made these assumptions and speculated these documents are fraudulent, she wasn't given an opportunity to rebut that. Let's assume she gets over the one-year bar issue and we get to the merits of the case, and let's presume that she's found credible. The best case, it seems to me, is that it's a case of imputed political opinion. Right. But in the record, they were questioning her about her brother, and then her brother disappears. I didn't see anything, and you can probably correct me on this, but I didn't see anything in the record that indicated they were after her individually apart from her brother. Is there any evidence? There is, Your Honor. At the first arrest, she was with her brother on the scooter. And they had the pamphlets. And they had the pamphlets, and although the police seemed to focus their questions towards her regarding her brother's activities, they then at the end, according to her, accused her of then having similar pro-Palestinian, anti-government sympathies based on her proximity with her brother on the scooter and due to the familial tie. I know that that wasn't argued, membership in a social group. But didn't they end up saying, and you can correct me if I'm wrong on this, that if you continue with your activities, we will kill your brother, something like that? Your Honor, I don't remember that phrased in that way. Sorry, I can't find it right now. You can see where I'm heading on this. At the end of the day, the question is whether she has a well-founded fear of returning based on her own political beliefs or those imputed to her. What's your best evidence that they imputed beliefs to her sufficiently that she would fear retaliation legitimately if she returned to India? That would most likely be due to the circumstances surrounding her second arrest, in which they actually mistreated her to the degree of torturing her and detaining her without access to the justice system. There's nothing in the record to show that she was, that there was a warrant for her arrest or that she was in any kind of formal proceedings. And during the time that she was detained, the police had alleged, one moment, Your Honor, that the police had stated that she worked, quote, hand-in-hand with her brother, administrative record at 97. So, again, the police are very clearly imputing the brother's opinions onto her. They believe the brother's opinions are anti-governmental and thus likewise they impute those types of sympathies to the respondent. Furthermore, after she had deported India, her mother had related to her that the police continued to seek her out, presumably because they continued to perceive her as being anti-national, again, due to her family tie with the brother. Any further questions? Do you want to take some time for a couple? Thank you, yes. I have a cough, too, so. May it please the Court. My name is Katie Lorenz. I'm appearing this morning on behalf of the Attorney General. This case presents two questions for this Court. The first is whether or not this Court has jurisdiction to review the immigration judge's finding that the petitioner did not file her asylum application within one year of her arrival in the United States. First of all, I would just like to state the respondent's objection to the petitioner this morning, raising new arguments that were not raised before the immigration judge, before the BIA, or, in fact, in the petitioner's documents and briefs filed with this Court, that the immigration judge should have suspended her hearing and done an investigation after she had a further opportunity to bring her original document. Second, though, I would just like to point to 8 U.S.C. 1158A3, which expressly provides that this Court does not have jurisdiction to review findings of the immigration judge under Subset 2 of the asylum statute, which deals with the timing of the application. So on that basis alone, this Court should dismiss the asylum petition. Why isn't the notice to appear conclusive on that, though? If the government has alleged that she entered on a certain date, why isn't that conclusive? I believe that the government, in the document you're referring to, was restating the date that she provided in her asylum application. It was at all times, though, her burden under the statute to demonstrate, by clear and convincing evidence to the immigration judge, that she arrived within one year. The immigration judge then properly considered all the evidence before him in determining whether she had established that and met her burden by clear and convincing evidence. In this case, she had only her own testimony. She had no stamp on any passport because she alleges that she entered under a different passport, even though the passport, which she provided a copy of, was issued four months before she alleged she arrived in the United States. And she then had no further corroboration of her entry date, including an affidavit or live testimony from the family friend she alleges she lived with when she first arrived in the United States. But, again, this all goes to a finding of fact. Unlike in Ramadan, a case that this Court decided last year, there was no mixed question of law and fact here. In Ramadan, the petitioner was conceding that she had failed to apply within the one-year time limit and was just contesting whether or not, given those undisputed facts, whether she appropriately fell within an exception because of changed circumstances. That's not the case here. This petitioner is still contesting the facts, I.J.'s finding of fact, that she did not meet that one-year time limit, and, therefore, it's unreviewable. The only questions Respondent maintains, therefore, that are the only claims, rather, that are properly before this Court are her withholding of removal and her convention against torture claims. Roberts. How about the credibility determination? That is appropriate for the withholding and the convention against torture claims. If we were to conclude that the I.J.'s adverse credibility determination is not supported by substantial evidence, what does that do to the one-year at large? Again, the asylum statute is clear. In the face of express statutory language, the Respondent maintains that the asylum claim is simply not remandable. The only claims that this Court could remand would be the withholding of removal claims and the cat claims, and that would be only if this Court reverses the I.J.'s findings on both her credibility determination and his finding that even crediting her testimony as true, she did not establish past persecution. Turning now to her to the I.J.'s credibility finding. I think we may have a recent case on the notice to appear issue, but I think the argument is on the notice to appear that it's a question of law and fact because the government has stopped from denying the facts that it alleges in its notice to appear. I grant you that the factual findings are not reviewable, so we don't need to discuss that, but I think the argument raised in that case, and I'm going to have to check that case, but it seemed to me was that once the government affirmatively alleges a date, that then they're stopped from denying the date later. I would be happy to do some additional research and submit an additional brief. But just off the top of your head, and I know I'm just hitting with this cold, do you view that as a question of law and fact, or do you think that's purely factual? Again, I think that that's purely factual. The date that was put on that notice of removal was just cribbed from the date she provided in her application for asylum. There was no finding, per se, in alleging that date. It was the immigration judge's duty under the statute to find whether she's demonstrated it by clear and convincing evidence. Ultimately, the only evidence she had was the date she put on her application and her own testimony. That was within his jurisdiction to determine whether she had met the one-year time limitation. He properly decided that she had not. Well, why don't we go to the merits of the withholding, because that probably subsumes some of this anyway. What if we assume for the sake of argument that she's credible? Where does that leave us? Even if this Court were to assume that she's credible, the IJ found that what she testified to did not rise to the level of persecution. Her description of the physical treatment that she received, being slapped, having her hair pulled, being called names, is not what this Court has held, constitutes the sort of intense physical mistreatment that qualifies as past persecution. How about a death threat to the family? We felt that's sufficient evidence. The immigration judge did not specifically mention the threat in his oral decision. I think, though, that in the context of what else she testified to, that the threat she alleges is as implausible as the remainder of her testimony. It has to be looked at in light of what else she testified to. She testified, for example, that her mom and her sister had not been harmed. There was also evidence before the immigration judge, in which he expressly did consider in his oral decision, based on these country condition reports, that membership in Shiromani Akali Dal is a legal political organization, and that mere membership does not target someone for arrest or for mistreatment. And so in light of that other testimony and the country condition reports, the immigration judge properly found that the treatment she had received, and I submit that that would include the threats, though he did not specifically mention the threats. It was simply not a plausible story that she was telling, and that she was not subject to persecution in the past. If I may turn to the credibility finding as well, I believe that there is substantial evidence that supports that credibility determination. First of all, the immigration judge stated that her descriptions of the arrest and the and, again, that it was implausible, given the country condition reports and given her own testimony about her mother and her sister. Second of all, her testimony regarding her identity is weak. There were multiple explanations offered at the hearing as to why she did not bring a passport, her original passport with her. Her attorney at one point said that she had provided it to her other attorney and that it was in his possession. She then later, when she was testifying, said that it was at home and she couldn't remember to bring it. Not only was the testimony regarding her identity weak, but then there were cumulative inconsistencies regarding how she obtained this passport in the first place. And I submit that this does go to the heart of the matter. This is not simply a peripheral issue. How this petitioner was able to exit the country, the circumstances under which she exited the country, whether or not the same government that she alleges was persecuting her in August of 2000, then issued her a passport in September of 2000, goes to the prosecution claim. And I think the IJ did properly consider that as one of many factors why she was simply not a credible witness. If there are no further questions from the panel, then the respondent submits that this simply is not a proper case for remand and that substantial evidence does support the immigration judge's holdings, both on her credibility and on the fact that she was not persecuted in the past. Thank you. Your Honors, I'd like to bring up a few points. First of all, the government is a step from also raising new arguments before this board in the sense that the judge never used the word that he found the respondent's testimony implausible, and he never mentioned that the mother or the sister are there without harm and therefore that is a basis for finding no objective, reasonable, well-founded fear. So that's not before you. Second of all, back to the NTA, there is a case that came out either this year, and I'm sorry I haven't cited it in additional citations, and I will supply that to the court immediately, regarding that when the government does make those allegations and doesn't give any other notice that the one year is an issue, then the petitioner has a reasonable basis to rely on those allegations when she, in her April 2002 master calendar hearing, conceded and admitted the allegations. Back to the actual passport and the circumstances of getting it and of departing the country, the court has held that visa concerns facilitating exit from a country where an alien fierce persecution should not be a point upon which the court has to find that the petitioner was incredible. Well, that may be so, but she did give about four different explanations about the passport. Why wasn't the IJ entitled to rely on that as support for adverse credibility finding? I think that the fact that she was confused just goes to show that she was not the one who prepared the passport. Her uncle had helped her do so. I think that might be in her declaration, and she couldn't recall because it had occurred about five years prior to the hearing, and she was not personally involved in obtaining it. So she herself couldn't recall that, again, substantiates her claim that she wasn't a person who went through the process of getting it. Then she said that she paid for it. Then she said her uncle got it. And then in terms of why she couldn't produce it, she said her attorney had it. And then she said she left it at home. And then she said she didn't know what happened to it, right? Right. But that just, again, goes to show that she was just confused and misspoke and not necessarily that she was trying to malign in front of the court. Okay. Thank you. Any further questions? Thank you for your argument. The case is certainly submitted.
judges: Thomas, Paez, Walker